**FILED**   **HP**

**NOVEMBER 4, 2009**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

SEP 3 0 2009

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| SONGA BROWN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 09 C4316 |
| V. | ) | JUDGE CONLON |
| | ) | |
| DISTRICT 299, CHICAGO PUBLIC SCHOOLS | ) | |
| ILLINOIS STATE BOARD OF EDUCATION | ) | |
| | ) | |
| Defendants | ) | |

## AMENDED COMPLAINT

Plaintiff, Songa Brown, in the matter of special education for Sirvante Brown, state as

follows for complaint against Defendants District 299 – Chicago Public Schools and Illinois

State Board of Education (collectively "Defendants"):

## NATURE OF ACTION

2      This civil rights action arises from the District 299, Chicago Public Schools and the

Illinois State Board of Education as it relates to the District 299 – Chicago Public Schools

providing in its entirety the implementation and accommodations of the Individual Evaluation

Plan (IEP) for Sirvante Brown for prior years to current, the measures used to obtain facts,

findings of facts and compensation ordered by the Hearing Officer James Wolter under the due

process system governed by the Illinois State Board of Education.

1

3    This lawsuit challenges the District 299-Chicago Public Schools continuous actions to refuse and has remained in non compliance for over 150 days to the Order set by the Illinois State Board of Education through the due process hearing procedures; and Illinois State Board of Education knowledge and allowing of that flawed system.

4    This lawsuit challenges District 299, Chicago Public Schools for the inappropriate managing and implementation of the special education programs during prior years that extended beyond the 2 year rule governing the District 299 responsibility; the discriminatory impact it has on Sirvante Brown.

5    This lawsuit challenges the District 299-Chicago Public Schools for their constant and continuous actions to refuse and/or non- implementation in its entirety of Individual Education Plan (IEP) set for Sirvante Brown.

6    This lawsuit challenges the falsification and misrepresentation of submitted documentation and testimonies as relate to Sirvante Brown during the due process hearing provided by teachers, evaluating staff, principals, case managers, and Board of Education administrative staff members.

7    This lawsuit also challenges the disallowed testimonies and documentations regarding the special education programs and services which resulted in effecting Sirvante Brown's education both directly and indirectly.

8    This lawsuit challenges the knowingly faulted manual and electronic attendance recording system which is implemented throughout the District 299, Chicago Public Schools system; its inappropriate usage as documentation within the due process hearing procedures and Illinois State Board of Education implementation and allowing of that flawed system.

9       This lawsuit challenges the two (2) years responsibility period as relates to the District

299 being responsible for its actions within a two (2) year period of time. Even though, the

District 299 had knowledge and appropriate resources to resolve the issues instead continued to

refuse to correct the issues and the usage of re-directive methods includes but not inclusive

negations and/or resolution conference attempts for over two years as relate to Sirvante Brown.

10      This lawsuit challenges the District 299 responsibilities under the IDEA of 2004 to

provide appropriate services, transition services and assistive technology equipment; as the

following should have begun with the initial evaluation of year 2000 as determined Sirvante

Brown had a learning disability and his deficiencies were within the phonic and decoding.

11      This lawsuit challenges Illinois State Board of Education funding scheme which

establishes both, direct and indirect actions which resulted in the unavailability of funds and/or

resources had on the appropriate education for Sirvante Brown under both the IDEA of 2004 in

its entirety and the violations of students' rights to attend "high quality educational institutions"

guaranteed by the Education Article under the Illinois Constitution, violation of students' rights

to equal protection under the Illinois Constitution; and  Illinois Board of Education knowledge,

implementation and allowing of that flawed system.

12      This lawsuit challenges the constant and current non implementation of services in its

entirety, appropriate and unavailability of assistive technology equipment, and transitions

services not provided under the IDEA of 2004 by the District 299; and Illinois Board of

Education knowledge and allowing of that flawed system.

13      This lawsuit challenges the meaning of "free appropriate public education" and "basic

floor opportunity"; and District 299 and Illinois Board of Education accountability,

accountability under IDEA of 2004 and their educational effects on Sirvante Brown.

3

14      This lawsuit challenges both the direct and indirect actions which resulted in the effect of Sirvante Brown educational opportunities in regards to the State's failed school funding scheme.

15      This lawsuit challenges District 299 Chicago Public Schools and Illinois State Board of Education responsibilities under Individuals with Disabilities Education Act of 2004 (IDEA) 20 USC 1400 provisions regarding State funding that took effect on July 1, 2005 to the required uses of funds reserved for State-level activities and the act.

## PARTIES

16      Plaintiff Songa Brown is the parent of the minor, Sirvante Brown, whom attend school in the District 299, City of Chicago Public Schools.

17      Defendant District 299, City of Chicago Public Schools is the public school system in the City of Chicago.

18      Defendant Illinois State Board of Education is a state agency that oversees and disburses billions of dollars raised to fund public school education.

## JURISDICTION AND VENUE

19      This action arises based on the IDEA and which involves a federal question under the IDEA and under the Illinois Civil Rights Act, the common law, and Articles I, IX and X of the Constitution of the State of Illinois. Jurisdiction is proper under Sections 5/1-108 and 5/2-209 of the Illinois Code of Civil Procedures, 735 ILCS 5/1-108 and 5/2-209.

20      Venue is proper in this Court, under the IDEA and 735 ILCS 5/1-108 and 5/2-209 of the Illinois Code of Civil Procedures, because many of the actions taken by Defendants from which

this action arise occurred in Cook County in the State of Illinois and all parties resides in this district.

## FACTS

21    This case comes before you due to the events which has taken place since the initial individual evaluation plan (IEP) dated 2000; addressing the severity of the non implementation and accommodations in the period of 2006 where forth to current, District 299 non compliance of over 150 days to the Order from due process hearing Officer James Wolters dated March 17, 2009; and the compensatory of 80 hours of tutoring.

22    In April 2006, prior to the beginning of Sirvante Brown's high school years, as the law requires an IEP meeting was held to address the resources and services needed to be implemented during the freshman year of high school for Sirvante Brown. In late September 2006, the plaintiff, Dr. House and numerous special education staff and/or providers meet to discuss Sirvante's IEP as it was not being implemented nor had assistive technology as relate. In October and December 2006, several of the special education team members and I again meet due to unavailability of instructors in the inclusion classes and their need to change his schedule as stated and quote, " to comply with the IEP" and "shortage of instructors due to budget cuts."

23    In December 2006, those accommodations such as oral examination and oral response were not being provided; as well, each of his core classes required a special education teacher to be within the classes which is called inclusion classes. Sirvante's IEP stated 1125 mpw; therefore, each core class required a special education teacher and/or qualified teacher included within the class with the regular teacher.  Within a few of his classes, there were no inclusion teacher; and/ or an instructor was in class for two days or three days but were not as IEP required

each day. The special education teacher whom assisted continued not implementing clues and other additional materials to assist with Sirvante understanding the lessons and homework, was not given reduced homework load of 30% as IEP stated nor were retests given, written notes were not given, to name a few. The plaintiff contact was not implemented weekly or biweekly as relate to reporting progress and/or any behavior concerns. These issues were to be corrected in January 2007.

24    The plaintiff continued to systematically stop by the school on a bi weekly basis and oftentimes, weekly to address any concerns of progress. Plaintiff requested several meetings with administration of the Office of Specialized Services and meet with the administrative staff responsible for the special education services at Kenwood Academy such as Dr. House, Ms Roberts, Ms. Washington, Ms Taylor Young, to name a few to address the non implementation issues such as clues, additional resources to assist with understand the material, books on tape for the literature courses (English, History), the 30% reduction, make up exams, oral examination and oral response, to name a few. Sirvante continued to fail throughout the school year and the stated accommodations of his IEP were not implemented.

25    In March 2007, the plaintiff contacted the Board of Education to receive some form of assistance in correcting the problems. The plaintiff was redirected by the Board of Education to speak with liaisons, consultants, Regional, and numerous others to obtain a resolution and/or to correct the non implementation of the IEP. The numerous meeting occurred from March 2007 to June 2007 with no resolution and Sirvante attending summer classes.

26    From August 2007 to March 2008, I meet with numerous administrators and the same issues remained numerous inclusion classes had no second instructor, oral testing and response not complied, assignment reduction of 30% not implemented, no books on tape for literature courses, etc. Basically, the District 299 continued to refuse to comply with the written IEP and the following example included but not inclusive, as to the simplicity of the IEP stated oral

6

testing and oral response remained not implemented and Sirvante's academic failure continued.

27      In March 2008, the plaintiff refused to sign the IEP and went back to the Board of Education to obtain a resolution as to the implementations and accommodations of Sirvante's IEP.

28      From March 2008 to October 2008, again, there were several meeting to address the issues as to the non implementations and accommodations of the IEP. The difference between those previous meetings were the administration involved were chief executive officer of Specialized Services, chief of staff of Specialized Services, mediators and attorneys, and numerous specialized services and/or other non related areas administrators. At one point, an agreement was drafted as to resolve the decoding and phonetic issues with Score Learning Center Spell Read program and his attending two CPS summer classes with probably of transferring to Sullivan High School in the fall. As special education accommodations were not met as early as summer classes; as teacher refused to allow retest and collectively accept revised homework assignments.

29      The Spell Read program did not occur and proven to be another re-directive technique used by the District 299. The end results remained no real academic resolution and the continuous none implementation of the IEP in its entirety continued to Sullivan High School.

30      The same resolution request included the following: Score Learning Center 80 hr Spell Read program to address the decoding and phonic issue, Merit (entire) software system to provide repetition and establish decoding skills to assist with his ability to grasp the concepts of his daily academics, a computer (laptop) with Microsoft software - to provide him with basic software for completing daily assignments and Norton Virus protection software - a virus protection software also basic for internet research and/or any online tutoring courses as to protect the computer from system viruses. Microsoft is also needed to run any basic software such as Merit, text reader and speak writer. Text read to assist with reading daily assignments

7

and speak writer to assist with daily written assignments and term papers. A tutor to assist him in achieving basic skills of English and writing as Sirvante Brown is unable to write basic sentences, paragraph nor term paper and/or written final exam. Please note: plaintiff require for the assistive technology items such as laptop computer, scanner/printer, text reader, speak writer, merit software and etc. were for the use of Sirvante Brown until graduation from school and plaintiff would return all items to District 299.

31     In October 2008, the plaintiff filed for due process hearing on the matter. From October 2008 to February 2009, again there were attempts to negotiate and resolve these issues. No resolution was obtained. In March 2009, there was a due process hearing; the hearing officer decision and/or order stated the District 299 provide 80 hours of tutoring for compensatory of non implementation and accommodations of IEP in its entirety for two years. The plaintiff contest the compensatory relief is insufficient for the actual three years not two (2) of non implementation of the IEP in its entirety such as retesting, oral examination and oral response, qualified teachers not within the inclusion classes for the full 1125 mpw as stated in the IEP.

32     The plaintiff contest the allowing of documentation of the faulted attendance system as part of the District 299 submitted documentation during the due process hearing. The plaintiff established several factors as relate to the faulted attendance system: (1) reports submitted by the District 299 were evaluators stated Sirvante was absent 189 days from school in one school year when there is only 170 actual school days, (2) random three month attendance reports produced by the District 299 which established Sirvante's absents were actual multiple tardies, (3) the District 299 admittance of the attendance system does not provide accurate attendance because system is based on minutes and not actual attendance; District 299 and Illinois State Board of Education's knowledge and allowing of this faulted system and (4) Sirvante Brown's transcript established he attempted 26.5 credits and earned 15.5 credits. Here, plaintiff established Sirvante

8

attendance report does not coincide with a student not attending school. In fact, Sirvante Brown has attempted more credits than needed for high school graduation (24 credits) and by mere determination along with an learning disability and a reading level of 4.2 has continued to pursue his education without appropriate resources.

## COUNT I – VIOLATION OF THE IDEA OF 2004 (20 USC 1400 ENTIRETY)

33      Count I arises under the Individuals with Disabilities Education Act of 2004 (IDEA) 20 USC 1400. The purposes of IDEA include ensuring that all children with disabilities have available to them a free appropriate public education (FAPE) that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living. [34 CFR 300.1(a)] [20 U.S.C. 1400(d)(1)(A)]. Therefore, information and belief emphasizes of special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living has not been achievable nor provided as evaluations and reports established Sirvante Brown is 17 years of age in the 11th grade with a reading capability of Grade 4.2, has attempted 26.5 credits and earned 15.5 credits. Sirvante Brown has attempted more credits than needed to graduate (24 credits) and has had a written IEP for nine years (since 2000) with constant academic failure.

## COUNT II – VIOLATION OF THE IDEA OF 2004

34      Count II arises under the Individuals with Disabilities Education Act of 2004 (IDEA) 20 USC 1400. ``(29) Special education.--The term `special education' means specially designed instruction, at no cost to plaintiffs, to meet the unique needs of a child with a disability, including—

9

The plaintiff has constantly paid for evening school, Saturday school and summer classes throughout Sirvante Brown pursuit to obtain his education and many of those classes were without special education accommodations. Also, the plaintiff paid for the cost of the classes due to primary factor, Sirvante was not receiving accommodations and implementation of his written IEP in its entirety during the normal school day time.

## COUNT III – VIOLATION OF THE IDEA OF 2004

35      Count III arises under the Individuals with Disabilities Education Act of 2004 (IDEA) 20 USC 1400. "(A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and…."

36      The plaintiff continued to seek through the resolution request instruction conducted in the classroom….and in other settings such as the 80 – 90 hr Spell Read by Score Learning Center.

## COUNT IIII – VIOLATION OF THE IDEA OF 2004

37      Count IIII arises under the Individuals with Disabilities Education Act of 2004 (IDEA) 20 USC 1400; "to ensure that educators and plaintiffs have the necessary tools to improve educational results for children with disabilities by supporting system improvement activities". Therefore, information and belief establish the necessary tools to improve educational results were not achieved as evaluations and reports established Sirvante Brown is 17 years of age in the 11th grade with a reading capability of Grade 4.2, has attempted 26.5 credits and earned 15.5 credits with a constant history of academic failure. Also, information and belief establish the requested resolution of computer, software, Merit, Score Spell Read program, text reader, speak writer, printer/scanner, and tutoring may have provided "necessary tools to improve educational

results for children with disabilities by supporting system improvement activities".

## COUNT V – VIOLATION OF THE IDEA OF 2004

38      Count V arises under the Individuals with Disabilities Education Act of 2004 (IDEA) 20 USC 1400; " coordinated research and personnel preparation". Therefore, information and belief establish the District 299 did not coordinated research and personnel preparation; District 299 did not established other than the written IEP; there were no supporting documentation such as kept records of such research, personnel used, authorization and approval, and methodology used along with Sirvante achieving academic success within the classes thus performed.

## COUNT VI – VIOLATION OF THE IDEA OF 2004

39      Count VI arises under the Individuals with Disabilities Education Act of 2004 (IDEA) 20 USC 1400; and " to assess, and ensure the effectiveness of, efforts to educate children with disabilities. [[Page 118 STAT. 2651]]. Therefore, information and belief establish the District 299 did not assess, and ensure the effectiveness of, efforts to educate children with disabilities. Sirvante Brown academic failure and none implementation of the IEP in its entirety establishes the District 299 did not ensure the effectiveness of, efforts to educate children with disabilities as relate to Sirvante Brown.

## COUNT VII – VIOLATION OF THE IDEA OF 2004

40      Count VII arises under the Individuals with Disabilities Education Act of 2004 (IDEA)

20 USC 1400; ``(7) Equipment.--The term `equipment' includes--
            ``(A) machinery, utilities, and built-in equipment,
        and any necessary enclosures or structures to house such
        machinery, utilities, or equipment; and

11

"(B) all other items necessary for the functioning
　　　　　of a particular facility as a facility for the provision
　　　　　of educational services, including items such as
　　　　　instructional equipment and necessary furniture;
　　　　　printed, published, and audio-visual instructional
　　　　　materials; telecommunications, sensory, and other
　　　　　technological aids and devices; and books, periodicals,
　　　　　documents, and other related materials."

Therefore, information and belief establish the District 299 did not provide appropriately and/or

not at all the machinery ….or equipment nor printed, published, and audio-visual instructional

materials; telecommunications, sensory, and other technological aids and devices; and books,

periodicals, documents, and other related materials. Plaintiff required assistive technology

evaluations and technological aids and device beginning in 2000 and constantly throughout every

meeting with administrators. Plaintiff request for technological devices such as the Lexus

software which was installed at Canter took three (3) years to obtain. The request for

technological devices at Kenwood Academy was never finalized and instead Sirvante was given

a dictionary reading pen as the appropriate aid and/or device to assist him with the decoding,

phonetic and low elementary reading level. The assistive technology department continuously

denied ever receiving request for evaluations and/or technological aids and devices from the

appropriate administrators at Kenwood Academy.

41　　　　Plaintiff continued to request assistive technology for Sirvante for another three years

and in September 2008 at Sullivan High installed in the library were text reader and speak writer.

Although, the equipment was installed its usage did not serve Sirvante's needs as the library

hours and/or library availability. The time required for Sirvante and/or any child with a learning

disability was not feasible. Also, Sirvante attended regular class hours, evening classes and

Saturday classes attempting to obtain credit for the multiple courses failed. In Sirvante's case the

aids and/or devices are needed to assist with daily assignments and homework assignments in all

courses. Plaintiff continued to request technological aids and devices for Sirvante within the resolution for home as well for the about three (3) years and no resolution has occurred. Therefore, on information and belief establishes District 299 constant pattern of refusing to comply with IDEA " to assess, and ensure the effectiveness of, efforts to educate children with disabilities. [[Page 118 STAT. 2651]].

## COUNT VIII – VIOLATION OF THE IDEA OF 2004

42    Count VIII arises under the Individuals with Disabilities Education Act of 2004 (IDEA) 20 USC 1400; ``(1) Assistive technology device.--

> ``(A) In general.--The term `assistive technology device' means any item, piece of equipment, or product system, whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve functional capabilities of a child with a disability.

43    Therefore, information and belief establish the District 299 did not provide nor usage of assistive technology device to increase, maintain, or improve functional capabilities of a child with a disability as Sirvante Brown's academic failure establish non increase, maintain or improve functional capabilities; as the refusal of the District 299 to address the numerous requests by plaintiff during the IEP annual meetings since 2000. The information and belief was established using the time period in which it took the District 299 to comply with the assistive technology assessment and the non implementation of the equipment at Kenwood Academy.

## COUNT VIIII – VIOLATION OF THE IDEA OF 2004

44    Count VIIII arises under the Individuals with Disabilities Education Act of 2004 (IDEA) 20 USC 1400; ``(2) Assistive technology service.--The term `assistive technology service' means

any service that directly assists a child with a disability in the selection, acquisition, or use of an assistive technology device. Such term includes--

> ``(A) the evaluation of the needs of such child, including a functional evaluation of the child in the child's customary environment;
>
> ``(B) purchasing, leasing, or otherwise providing for the acquisition of assistive technology devices by such child;
>
> ``(C) selecting, designing, fitting, customizing, adapting, applying, maintaining, repairing, or replacing assistive technology devices;
>
> ``(D) coordinating and using other therapies, interventions, or services with assistive technology devices, such as those associated with existing education and rehabilitation plans and programs;
>
> ``(E) training or technical assistance for such child, or, where appropriate, the family of such child; and
>
> ``(F) training or technical assistance for professionals (including individuals providing education and rehabilitation services), employers, or other individuals who provide services to, employ, or are otherwise substantially involved in the major life functions of such child.

45     Therefore, information and belief establish the District 299 did not provide Sirvante Brown a functional evaluation; nor purchasing, leasing, or otherwise provide for the acquisition of assistive technology devices. The District 299 did not select, design, fit, customize, adapt, apply, maintain, repair, or replace assistive technology devices; nor coordinate or use other therapies, interventions, or services with assistive technology devices, such as those associated with existing education.

## COUNT X– VIOLATION OF THE IDEA OF 2004

46     Count X arises under the Individuals with Disabilities Education Act of 2004 (IDEA) 20 USC 1400; ``(14) As the graduation rates for children with disabilities continue to climb,

providing effective transition services to promote successful post-school employment or education is an important measure of accountability for children with disabilities."

The term "transition services" means a coordinated set of activities for a child with a disability that:

(1) Is designed to be within a results-oriented process, that is focused on improving the academic and functional achievement of the child with a disability to facilitate the child's movement from school to post-school activities, including postsecondary education, vocational education, integrated employment (including supported employment); continuing and adult education, adult services, independent living, or community participation;

(2) Is based on the individual child's needs, taking into account the child's strengths, preferences, and interests; and

(3) Includes instruction, related services, community experiences, the development of employment and other post-school adult living objectives, and, if appropriate, acquisition of daily living skills and functional vocational evaluation.

47     Therefore, information and belief establish District 299 have refused to take remedial steps to provide effective transition services to promote successful post-school employment or education for Sirvante Brown.

## COUNT XI –VIOLATION OF PROVIDING APPROPRIATE SERVICES AS REGULATED BY IDEA OF 2004 LISTED ALLOWABLE STATE-LEVEL ACTIVITIES.

48     Count XI arises from the District 299 Chicago Public Schools and Illinois Board of Education refusal and/or not providing all of the available resources for Sirvante Brown which

15

were allowable under the funds reserved for allowable state level activities available to the District 299.

49    Funds reserved under 34 CFR 300.703(b)(1) also may be used to carry out the following activities:

> (1) For support and direct services, including technical assistance, personnel preparation, and professional development and training;
>
> (2) To improve the use of technology in the classroom by children with disabilities to enhance learning;
>
> (3) To support the use of technology, including technology with universal design principles and assistive technology devices, to maximize accessibility to the general education curriculum for children with disabilities;
>
> (4) Development and implementation of transition programs, including coordination of services with agencies involved in supporting the transition of students with disabilities to postsecondary activities;
>
> (5) To assist LEAs in meeting personnel shortages;
>
> (6) To support capacity building activities and improve the delivery of services by LEAs to improve results for children with disabilities;
>
> (7) To support the development and provision of appropriate accommodations for children with disabilities, or the development and provision of alternate assessments that are valid and reliable for assessing the performance of children with disabilities, in accordance with sections 1111(b) and 6111 of the ESEA;

50     To provide technical assistance to schools and LEAs, and direct services, including supplemental educational services as defined in section 1116(e) of the ESEA to children with disabilities, in schools or LEAs identified for improvement under section 1116 of the ESEA on the sole basis of the assessment results of the disaggregated subgroup of children with disabilities, including providing professional development to special and regular education teachers, who teach children with disabilities, based on scientifically based research to improve educational instruction, in order to improve academic achievement to meet or exceed the objectives established by the State under section 1111(b)(2)(G) of the ESEA.[2] [34 CFR 300.704(b)(4)] [20 U.S.C. 1411(e)(2)(C)(x), (xi)].

51     Therefore, information and belief establishes the District 299 refusal by their actions to provide Sirvante Brown the use of technology in the classroom to enhance learning, to support the use of technology, including technology with universal design principles and assistive technology devices, to maximize accessibility to the general education curriculum for Sirvante ; and development and implementation of transition programs, including "coordination of services with agencies" involved in supporting Sirvante's transition to postsecondary activities. Also, the District 299; Illinois State Board of Education knowingly and allowing this flawed system did not improve educational instruction for Sirvante Brown, in order to improve academic achievement to meet or exceed the objectives established by the State under section 1111(b)(2)(G) of the ESEA.[2] [34 CFR 300.704(b)(4)] [20 U.S.C. 1411(e)(2)(C)(x), (xi).

## COUNT XII VIOLATION OF THE ILLINOIS CONSTITUTION

52     Under Section 5/2-3.63 of the Illinois School Code, 105 ILCS 5/2-3.63, schools set student learning objectives which meet or exceed goals established by the State. According to

ISBE, ILS "should reflect what Illinois citizens generally agree upon as constituting a core of student learning." The ILS apply to all public schools students includes Sirvante Brown in the State of Illinois and should "provide a framework to build strong and rich classroom experiences that incorporate all the important learning a community expects of its students and incorporate knowledge and skills that will enable students, Sirvante Brown to be successful in the workplace of their choice. Also, the ILS applies to all public schools in the State including Chicago Public Schools and intended to "provide a basis for equal opportunity to learn".

53      In order for students to achieve the Illinois Learning Standards, they must have access to critical basic resources such as adequate school facilities, qualified teachers, small class sizes, early childhood education, and effective academic intervention programs. The level of funding available to some school districts in Illinois leaves them unable to provide these critical basic resources to students.

54      Therefore, information and belief establishes District 299 constant refusal to implement the appropriate resources; Illinois State Board of Education knowingly and allowed this flawed system were Sirvante Brown was denied the adequate qualified teachers in each course as IEP stated within inclusive classes, denied small class sizes, denied adequate early childhood education that would have addressed his learning disability and/or academic achievement, technological aids and devices, and currently denied effective intervention programs.

55      On information and belief, Illinois State Board of Education's school funding scheme provided inadequate funding to school districts were schools such as Kenwood Academy and Sullivan High School resides and denied Sirvante Brown the opportunity to obtain a high quality education and to meet the Illinois Learning Standards. The Illinois State Board of Education conduct in enacting, enforcing and implementing this school funding scheme amounts to

violation of Article X, Section 1 of the Illinois Constitution.

56    Defendants' willful violation of the IDEA of 2004 has irreparably harmed Sirvante

Brown by limiting his educational opportunities and irreversibly affecting his long term

prospects for employment and further education as college, university and/or trade school.

Sirvante Brown is without an adequate remedy at law and will continue to suffer irreparable

harm unless Defendants are had responsible for its actions through the compensatory of

Sirvante Brown obtaining a high school diploma including 5 years full college or university

tuition plus books, housing, equipment and services such as tutoring in all core subjects

especially English and basic writing skills, additional assistance in completing written

assignments; equipments needed to complete and perform day to day homework and class

assignments such as a computer, softwares: Microsoft, Norton or similar virus protection;

Kaplan, Merit and/or other similar skill building software to continue basic repetition learning

skills needed for education and employment performance,  printer and scanner needed to

complete homework and daily assignments and/or any research needed to obtain for completion

of assignments, text reader and speak writer needed to assist in daily completion of assignments

as his learning disability deficiencies support the need; and the probability of salary earnings

over the life cycle of employment as a sport analyst and/or business leader.

57    WHEREFORE, the Plaintiffs respectfully request that the Court enter an order:

    a.  Declaring that Defendants have failed to appropriately compensate Sirvante Brown for
       their actions.

    b.  Declaring that Defendants have failed to appropriately implement Sirvante Brown's IEP
       and provide him with all resources available to achieve academic progress and/or to
       receive basic floor opportunity includes assistive technology aids and devices.

c. Requiring Defendants to ascertain the actual cost of providing Sirvante Brown with an opportunity to receive the resolution items: all core subjects including tutoring, computer, software, text reader, speak writer, printer, scanner throughout the remaining pursuit to obtaining diploma.

d. Requiring Defendants to ascertain the actual cost of Sirvante Brown for 5 years of college or university tuition, housing, books, equipment and resources needed for all core subjects including tutoring, computer, software, text reader, speak writer, printer, scanner, etc to any college or university of his choice.

e. Requiring Defendants to ascertain the probable cost of Sirvante Brown life cycle of employment.

f. Awarding Plaintiff their cost of suit incurred herein;

g. Granting such other relief as the Court deems just and equitable.

## VERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedures, the undersigned certifies that the statements set forth in the foregoing Verified Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he/she verily believes the same to be true.

Dated: September 15, 2009

Songa Brown

Dated:    September 15, 2009                                      Respectfully Submitted,

                                                                 Songa Brown

                                                    By: _____
                                                                 Songa Brown

Songa Brown
1254 W North Shore Ave, #2
Chicago IL 60626
(773) 973-0054
sbrws@sbcglobal.net

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS